UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL URBINO, on behalf of himself and all others similarly situated, | Civ. No.: _____ |
| Plaintiff, | **PLAINTIFF DEMANDS A TRIAL BY JURY** |
| v. | |
| AMBIT ENERGY, L.P., AMBIT TEXAS, LLC, and AMBIT NORTHEAST d/b/a AMBIT ENERGY, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

1. This is a putative class action on behalf of Plaintiff and a class of all similarly situated against Ambit Energy, L.P. and Ambit Texas, LLC (collectively, "Defendants" or "Ambit Energy"). Plaintiff, Michael Urbino, individually and on behalf of all others similarly situated, alleges as follows upon personal knowledge as to his actions and upon information and belief based upon investigation of his attorneys as to all other facts alleged in the Class Action Complaint.

## NATURE OF THE ACTION

2. Plaintiff brings this action to redress the deceptive marketing and billing practices of Ambit Energy, which have resulted in thousands of consumers across the nation to pay substantially more for their electricity than they should have paid in the absence of Defendant's unlawful and misleading scheme. Ambit Energy has taken advantage of the deregulation of the retail electricity market in New Jersey and other states by luring consumers into switching

1

energy suppliers based on offers of "life-changing rewards" such as "free travel, cruises and getaways" and "free energy" for convincing other unsuspecting consumers into enrolling in the Ambit Energy program and by falsely promising to charge competitive rates reflective of prevailing market conditions.

3. In fact, however, Ambit Energy's pitch is in reality a false and misleading scheme, in which the rates actually charged to consumers are not competitive and bear little relation to prevailing market conditions. As a consequence of this scheme, consumers in New Jersey and across the nation are essentially being scammed out of millions of dollars in exorbitant charges for electricity.

## PARTIES

4. Plaintiff Michael Urbino is a resident of West Orange, New Jersey, in Essex County. Plaintiff has been a customer of Ambit Energy, L.P. since early 2012. As a result of Ambit Energy's unfair and deceptive course of conduct, Plaintiff Michael Urbino has incurred excessive charges for electricity.

5. Defendant Ambit Energy, L.P. is a Texas limited partnership headquartered at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202. Ambit Energy is a residential and commercial retail energy provider. The President of Ambit Energy, L.P. Jere W. Thompson, Jr., whose office address is also at Ambit Energy corporate headquarters.

6. Defendant Ambit Texas, LLC is a Texas limited liability company, whose sole member is Ambit Energy, L.P., and whose President and CEO is Jere W. Thompson, Jr. Ambit Texas, LLC is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

7. Defendant Ambit Northeast, LLC d/b/a Ambit Energy ("Ambit Northeast") is a corporation registered with the Secretary of State of New Jersey and is listed by the State of New

Jersey Board of Public Utilities as an alternative energy supplier to PSE&G.  Ambit Northeast's headquarters are at 103 Carnegie Center, Suite 300, Princeton, NJ 08540.

8. Collectively, Defendants Ambit Energy, L.P., Ambit Texas, LLC and Ambit Northeast, LLC d/b/a Ambit Energy are referred to herein as "Defendants" or "Ambit Energy."

## JURISDICTION AND VENUE

9. This is a proposed class action covering the states of New Jersey, California, Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Hampshire, New York, Pennsylvania, Rhode Island, Texas, Virginia and Washington, DC.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the Plaintiff and Defendants are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs; and pursuant to 28 U.S.C. § 1332(d)(2), because the Plaintiff and the vast majority of the putative class (each individual member a "Class Member" and collectively the "Class Members") are of diverse citizenship from the Defendants and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants regularly transact business in this District and are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

11. Near the turn of the century, a number of states, including New Jersey, deregulated their markets for the supply of electricity. Enacted in 1999, the New Jersey Electric Discount and Energy Competition Act ("NJ Energy Act") fundamentally changed the way residential and commercial consumers of electricity paid for their services. Essentially, the NJ Energy Act separated the cost of generating and supplying the power from the cost of delivering it. Administered by the New Jersey Board of Public Utilities, the bill abolished and updated certain regulations with the goal of reducing costs to consumers, and allowed consumers to choose the company that supplies their electricity.

12. In enacting the NJ Energy Act, the New Jersey legislature noted that the law was designed to "[l]ower the current high cost of energy, and improve the quality and choices of service, for all of [New Jersey's] residential, business and institutional consumers" as well as to "[p]lace greater reliance on competitive markets, where such markets exist, to deliver energy services to consumers in greater variety and at lower cost than traditional, bundled public utility service."[1]

13. Ambit Energy is an energy reseller. Following the deregulation of the energy industry in 2000, Ambit started reselling energy in a number of states, including New Jersey. Ambit utilizes the existing energy carriers' delivery systems, but charges their own rates.

14. Ambit Energy is also a multi-level marketing ("MLM") program that is promoted through Internet advertising, company websites, social media, presentations, group meetings, conference calls, and brochures.

---

[1] *See* Electric Discount and Energy Comp. Act, P.L. 1999, sec. 2(a)(1)-(2), eff. Jan. 25, 1999 (http://www.njleg.state.nj.us/9899/Bills/s0500/7_i1.pdf) (last visited August 11, 2014)).

15. Ambit Energy takes advantage of the deregulation in the energy industry to engage in a deceptive scheme which results in excessive rates charged to consumers for electricity. Ambit Energy's scheme involves materially misleading representations which induce consumers, who are unaware of market fluctuations in energy prices, to join Ambit Energy, on the basis that switching will lower their rates. In reality, the market fluctuations actually increase the rates that Plaintiff and other Ambit customers pay for their electricity, a material fact that Defendants do not disclose.

16. Ambit Energy consistently and repeatedly represent their rates as both low and competitive, and guarantee customers satisfaction, with statements on their website and in their marketing materials such as the following:

"Our residential Customers enjoy **_substantial savings on their energy bills_**, and can take advantage of our attractive Travel Rewards program."

"[O]ur Free Energy program enables Customers to **_reduce, or even eliminate, their monthly energy charges_** by referring friends and associates to use Ambit energy service."

"A lot of people only know Ambit by our **_low, competitive rates._**"

"While we're proud to give our Customers **_the consistent savings_** they deserve, those who really know Ambit understand low rates are only part of the story."

"**_Exceptional Value and Life-Changing Rewards._**"

These statements are materially misleading because consumers receive energy services that are substantially more costly, and consumers eventually learn that the "rewards" are worth far less than the "impressive savings and benefits" trumpeted by Ambit Energy.

17. In materials provided to its "widespread network of Independent Consultants" – who are effectively salesman paid to push Ambit Energy on unwary customers – Ambit Energy touts its "Great savings!" and "competitive rates" which noting that a consumer can expect "Satisfaction guaranteed." Ambit Energy also uniformly and consistently markets its electricity sales in print and on the Internet by offering consumers a choice of either "Free Energy" or "Travel Rewards." Ambit Energy entices consumers by statements that "every year, Ambit Energy gives our Customers millions of dollars through our Free Energy program." These statements are part of the scheme and also materially misleading in that the rates paid by consumers are excessive in comparison to those offered by other reputable energy suppliers. All of these statements are also materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price. No reasonable consumer who knows the truth about the Ambit Energy's exorbitant rates would choose Ambit Energy as an electricity supplier.

18. Ambit Energy's misstatements and omissions caused Plaintiff Michael Urbino's injuries because he believed that he would be charged less for electricity than he was actually charged by Ambit Energy. Plaintiff would not have enrolled in Ambit Energy's service but for Defendants' deceptive marketing and business practices. Had Plaintiff known that the rates he would be charged by Ambit Energy were substantially higher than the rates he was paying his previous electricity supplier, he would not have enrolled with Ambit Energy. Plaintiff has sustained economic injury and damages caused by Ambit Energy's omissions and misstatements.

19. Numerous complaints about Defendants' deceptive and misleading practices have been raised on websites that seek the experience of Ambit Energy customers, including the following examples:[2]

- *I was told the rate was a fixed rate and now the rate tripled this winter (Rate jump from 5/7 cents a KWH to 15 3/4 cents a KWH). It turned into the old "bait and switch" game. My bill more than doubled. I was told it would be adjusted to the lower rate, yet it never happened. I have been complaining about it to the Public Utilities Commission and they are looking into it. I was then given a run around about how cold this winter was yet Ambit refused to give me a credit. Now they are saying it was never a fixed rate. I have been lied to and taken advantage of. I will never recommend this company to anyone. To me they are the WORST supplier out there. My cousin set this account up for me and she told me that she set it up fixed rate and the company chose to change it without any notice to me. My opinion is to stay away or you too may get burned like I did. I want the company to refund the difference in the old and new rate for all 3 months.  Stephanie of Effort, PA on May 30, 2014*

- *I signed up for Ambit Gas & Electric through a friend who is one of their consultants. The prices seemed ok at first but then during March 2014, I received a bill charging me 1.02504 per therm for Gas when PSEG was charging .294066 per therm. When inquiring about the difference I was basically told that's what the price was at the time and there's nothing they can do. I requested to have the service cancelled and received confirmation that both Gas and Electric would be cancelled w/in 2 billing cycles. In May I followed up about why it was still showing up on my bill and was told the Electric cancellation went through but not the Gas and had to go through the whole process over again even though they admitted it was an error on their end. Whatever $ you save initially with this company you will end up paying back and then some! Lesson learned. Do not sign up with this company, it's a complete rip off/bait & switch. You'll end up paying the price for it eventually! Aneta of North Brunswick, NJ on May 21, 2014*

- *Prices almost doubled with Ambit. I'm canceling. I was told I would get 3 percent back lower than my old company. No such thing. They are liars!  Carroll of Jersey City, NJ on May 19, 2014*

- *A friend told us how good Ambit was and their prices for gas and electric were lower until recently. The bill we received today, the gas was .7685, 20 cents higher than National Grid, The electric was .16957 more than double NG. I called Ambit, they said we were on a variable rate, we were told no such thing when we signed up. How can any company be so dishonest as to steal from the elderly and disabled. My husband is elderly and disabled, my son is disabled, we live on Social Security,*

---

[2] The following quotations were accessed on August 14, 2014 on the following website: http://www.consumeraffairs.com/utilities/ambit.html.

- *Ambit doesn't care. We set our heat at 55 nights and 63 days to get thru the winter to keep bills down. I called Ambit today and told them I was going back to National Grid, I can't stand being robbed by companies that lie to their customers.  Georgia of Hudson Falls, NY on May 12, 2014*

- *I used to be Ambit rep. It was the most embarrassing experience in business I ever had. I signed up people and their rates went up by 50 percent. They were calling me frantically and many of these people with my friends and close relatives. I would advise anybody to stay away as far as possible even when speaking to them on the phone. They don't seem honest at all.  sam of Lakewood, NJ on May 9, 2014*

- *I signed up with Ambit a while ago because I thought it was a good market and something my kids could learn about selling and business. Being busy with my own business I didn't have time to concentrate on it and wasn't really paying attention. Thank God I didn't sell Ambit to anyone or get my kids involved. My personal electric rates went up 70%. I did this to save money off BGE - not spend more. These guys cost me over $2k with all of the entry fees, web maintenance fees and extra cost for electric. My advice, stay away. If you are looking for lower electric bills, look somewhere else. If you are looking to make money, start a real business where you are responsible for your reputation and not these guys.  David of Woodstock, MD on May 2, 2014*

- *I have been with Ambit Energy since 2012 for gas and longer for my electric. My average bill in the peak winter months has about $195 to $230. Without warning my February bill came in at a whopping $464. I tried desperately to contact someone and was constantly told due to high volume they could not answer the phone and to try again later. Well before you know it, my March bill rolls in at a whopping $427. My house is by no means large and if I was still with NJNG my bill would have been $195. They went from $.45 a Therms to $1.71!!! Is this even legal. When I asked why they did not warn me, they said it was not their policy. And like an earlier complaint in this thread, I am stuck with them for 60 days. I can't even heat my home!!! I think we should all get together and fight this. They should not be able to get away with this!!!  Cathy of Howell, NJ on April 3, 2014*

20.     These complaints reflect the false and misleading course of conduct that Ambit Energy has engaged in, leading to damages to consumers across the nation.

### The Experiences of the Named Plaintiff Michael Urbino

21.     Plaintiff Urbino became a customer of Ambit Energy in early 2012.

8

22.     Plaintiff Urbino switched from PSE&G to Ambit Energy based on Defendants' representations of "substantial savings" based on "low, competitive rates."

23.     In early February of 2014, Plaintiff Urbino received his January 2014 energy bill for the period December 30, 2013 through January 29, 2014. The kilowatt hour ("kWh") price for Ambit Energy is higher than the kWh price that Plaintiff would have been charged by PSE&G.

24.     In fact, the amount that Plaintiff was charged by Ambit for the electricity during the month of January was over 60 percent higher than he would have paid PSE&G during the same period.

## Class Allegations

25.     Plaintiff brings this suit as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Fed.R.Civ.P. 23. Plaintiff seeks to represent the following Class:

> All persons who are or have been customers of Ambit Energy in the states of New Jersey, California, Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Hampshire, New York, Pennsylvania, Rhode Island, Texas, Virginia and Washington, DC who were injured as a result of Defendants' deceptive marketing scheme. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

26.     Plaintiff reserves the right to re-define the Class prior to moving for class certification.

27.     Plaintiff does not know the exact size or identities of the proposed Class, since such information is in the exclusive control of Defendants. Plaintiff, however, believes that the

9

Class encompasses thousands of individuals who are geographically dispersed throughout the nation. Therefore, the number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

28. Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

    a. The nature, scope and operations of Defendants' wrongful practices;

    b. Whether Defendants engaged in fraudulent practices as to Class Members;

    c. Whether Defendants' conduct amounts to a violation of the New Jersey Consumer Fraud Act;

    d. Whether Defendants breached the covenant of good faith and fair dealing with Class Members; and

    e. Whether Plaintiff and the Class suffered damages as a result of Defendants' misconduct and, if so, the proper measure of damages.

29. Plaintiff's claims are typical of the members of the Class because Plaintiff and all Class Members were injured by the same wrongful practices of Defendants as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class Members, and are based on the same legal theories. Plaintiff has no interests that are contrary to or in conflict with those of the Class they seek to represent.

30. Questions of law or fact common to Class Members predominate and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class Members is economically unfeasible and

procedurally impracticable.  While the aggregate damages sustained by Class Members are likely to be in the millions of dollars, the individual damages incurred by each Class Member resulting from Defendant's wrongful conduct are, as a general matter, too small to warrant the expense of individual suits.  The likelihood of individual Class Members' prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials o the same factual issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Class under Rule 23(b)(3) is proper.

31. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

**FIRST COUNT**
**(Breach of Covenant of Good Faith and Fair Dealing)**

32. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

33. Defendants have a duty of good faith and fair dealing with respect to their dealings with consumers, including Plaintiff and the Class Members.

34. There is an implied duty of good faith and fair dealing in every contract, and Defendants had an implied duty to insure that their marketing materials and other representations regarding electricity rates were not false and misleading with respect to energy consumers.

35. Plaintiff and Class Members negotiated their service agreements with Defendants from a position of unequal bargaining power.

36. By virtue of their contractual relationship, Defendants had an implied duty to Plaintiff and the Class Members to take reasonable steps insure that all sums that they collected or attempted to collect under the service agreements with Plaintiff and the Class Members were legally due.

37. Defendants breached the covenant of good faith and fair dealing by engaging in a deceptive and misleading course of conduct as the rates charged to energy consumers, as described above.

38. In so doing, Defendants acted recklessly, maliciously, in bad faith, and without good cause, thereby preventing Plaintiff and the Class from receiving their reasonably expected benefits under the services agreements.

39. Plaintiff and the Class Members relied to their detriment upon misleading assertions and conduct of Defendants, and such reliance may be presumed based on the Defendants' unlawful conduct.

40. As a direct and proximate result of the aforementioned wrongful conduct committed by Defendants, Plaintiff and the Class Members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial. Plaintiff and the Class Members are entitled to damages and injunctive and declaratory relief as claimed below.

## SECOND COUNT
**(Violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56.8-1, *et. seq.*)**

41. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

42. The acts and practices of Defendants as set forth above, have directly, foreseeably, and proximately caused ascertainable damages and injury to Plaintiff and the Class Members in amounts yet to be determined as described in greater detail above, including but not limited to having been compelled to pay amounts in excess of the competitive rates for energy that Defendants promised them.

43. The actions of Defendants constitute acts, uses, or employment of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise or real estate in violation of the CFA.

44. As a result of Defendants unlawful acts or practices, Plaintiff and the Class have been injured in amounts to be proven at trial, and Defendants should be ordered to pay, as damages to Plaintiff and the Class Members, attorneys' fees and costs, the ascertainable losses suffered by Plaintiff and the Class Members, and such amounts should be trebled pursuant to the terms of the CFA, and Defendants should be enjoined from continuing to violate the law hereafter, as well as ordered to provide the other relief set forth below.

## THIRD COUNT
**(Unjust Enrichment)**

45. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

46. Plaintiff and the Class Members conferred a tangible economic benefit upon Defendants by contracting with Defendants for energy. Plaintiff and the Class Members would not have contracted with Defendants for energy had they known that Defendants had engaged in a misleading marketing scheme and would charge rates substantially in excess of those charged by their local utilities.

47. Failing to require Defendants to provide remuneration under these circumstances would result in Defendants being unjustly enriched at the expense of Plaintiff and the Class Members.

48. Defendants' retention of the benefit conferred upon them by Plaintiff and the Class Members would be unjust and inequitable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered upon Defendants as follows:

A. For economic and compensatory damages on behalf of Plaintiff and all Class Members;

B. For actual damages sustained;

C. For emotional distress damages, as applicable;

D. For treble damages, as applicable;

E. For punitive damages, as otherwise applicable;

F. For declaratory relief, declaring that Defendants' actions are unlawful;

G. For injunctive relief, compelling Defendants to cease their unlawful actions;

H. For reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

I.   For such other and further relief as this Court deems just and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues within the instant action so triable.

Dated: August 19, 2014                    By:   **/s/Jonathan Minkove**
Jonathan Minkove, Esq.
Lawrence J. Friscia, Esq.
Friscia & Associates, LLC
45 Academy Street
Suite 401
Newark, New Jersey 07102
Tel:  (973) 500-8024
Facsimile:  (888) 809-3747
e-mail:  jon.minkove@friscialaw.com
             lawrence.friscia@friscialaw.com

Charles J. LaDuca, Esq.
Bonnie Prober, Esq.
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD  20814
Tel:  (240) 483-4292
Facsimile:  (202) 789-1813
e-mail:  charles@cuneolaw.com
             bprober@cuneolaw.com

Michael J. Flannery, Esq.
Cuneo Gilbert & LaDuca, LLP
300 North Tucker Boulevard
Suite 801
St. Louis, MO  63101
Phone:  (314) 226-1015
Facsimile:  (202) 789-1813
e-mail:  mflannery@cuneolaw.com

*Attorneys for Plaintiff*