<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL URBINO, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>AMBIT ENERGY HOLDINGS, LLC, et al.,<br><br>　　　　　　　Defendants. | Civil Action No. 14-5184 (MAS) (DEA)<br><br>**OPINION** |

<u>**SHIPP, District Judge**</u>

　　This matter comes before the Court on the motion of Defendants Ambit Energy Holdings, LLC, Ambit Texas, LLC, Ambit Northeast, LLC, and Ambit New York, LLC (collectively, "Ambit") to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 37.) Plaintiff Michael Urbino ("Plaintiff" or "Urbino") filed a brief in opposition (ECF No. 49), followed by Ambit's filing of a reply brief (ECF No. 58). The Court, having considered the parties' arguments, has decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Ambit's motion to dismiss.[1]

**I.　<u>Background</u>**

　　This case involves a dispute over a third-party energy supplier's alleged practice of attracting new customers by making representations about competitive rates and savings, but

---

[1] This Court's jurisdiction is premised on 28 U.S.C. § 1332(d)(2)(A) and (6) of the Class Action Fairness Act of 2005.

allegedly charging rates higher than its competitors. In the late 1990's, New Jersey deregulated its energy markets so that consumers could choose to purchase gas and electricity from third-party suppliers. (Am. Compl. ¶ 32, ECF No. 29.) The Amended Complaint alleges that Ambit, a third-party supplier, made repeated statements on its website and in its marketing materials about "consistent" and "low" rates. (*Id.* ¶ 40.) The alleged statements include the following:

- "Our residential Customers enjoy substantial savings on their energy bills, and can take advantage of our attractive Travel Rewards program."

- "A lot of people only know Ambit by our low, competitive rates."

- "While we're proud to give our Customers the consistent savings they deserve, those who really know Ambit understand low rates are only part of the story."

- "Exceptional Value and Life-Changing Rewards."

- "Great savings!" and "competitive rates."[2]

(*Id.*) Urbino claims that these statements are purposefully misleading because they "fail to inform consumers that a spike in wholesale energy rates (which Ambit does not control, and whose risk Ambit passes on to consumers) can dramatically increase their energy costs." (*Id.* ¶ 42.) As a result, Urbino alleges, Ambit induces customers to switch energy providers by making claims about energy savings, yet Ambit's customers' energy costs increase instead of decrease. (*Id.* ¶¶

---

[2] The Amended Complaint also includes postings from a consumer affairs website which describe individuals' experiences with Ambit's allegedly misleading business practices. (Compl. ¶ 46.) Although the postings include information that, if taken as fact, support Urbino's allegations, Urbino argues that the postings are only included to address "the scope of the proposed class, which has no bearing on whether [Urbino] has viable causes of action. . ." (Pl.'s Opp'n. Br. 17, ECF No. 49.) While the Court is concerned with the reliability of internet postings, it will consider the postings only with respect to defining a proposed class as Urbino requests. *See Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at 4 *n.2 (D.N.J. Aug. 16, 2010) (expressing concern over the reliability of internet materials but refusing to strike them from the complaint).

43-45.)

Urbino alleges that he switched from Public Service Enterprise Group ("PSE&G"), his previous energy supplier, to Ambit Energy in 2012 because of Ambit's "representations of 'substantial savings' based on 'low, competitive rates.'" (*Id.* ¶ 48.) In February 2014, however, he found that his electricity bill for the period of December 30, 2013, to January 29, 2014, was sixty percent higher than it would have been with PSE&G. (*Id.* ¶ 49.) In light of the above, Urbino commenced the instant action on behalf of himself and all other Ambit customers that were allegedly harmed by Ambit's supposed misrepresentations and omissions.

## II.  **Legal Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). While a complaint does not need to contain detailed factual allegations to withstand a Rule 12(b)(6) motion to dismiss, a pleader must "provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545; *see also* Fed. R. Civ. P. 8(a)(2). Put another way, the pleader must "set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur

R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990)). Yet, importantly, in a Rule 12(b)(6) motion to dismiss, "the defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Effectively distilling the above, courts use a three-step process to determine whether a complaint survives a Rule 12(b)(6) motion to dismiss. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court "tak[es] note of the elements a plaintiff must plead to state a claim." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court separates the factual elements from the legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). This is crucial because legal conclusions may accompany factual assertions to provide the complaint's framework, but legal conclusions are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Third, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has made a plausible claim for relief." *Fowler*, 578 F.3d at 210-11.

### III. Discussion

Defendants request dismissal of the Complaint. As a preliminary matter, the Court notes that Plaintiff Brian Whitney voluntarily dismissed his claims after Defendants filed their motion to dismiss. (ECF No. 48.) As a result, because Brian Whitney brought Counts Two through Five of the Complaint, neither Plaintiff's Opposition Brief, nor Defendants' Reply Brief, discuss those Counts. (Pl's. Opp'n Br. 3; Defs.' Reply Br., ECF No. 58.) Accordingly, the Court only addresses the remaining claims brought by Urbino on behalf of himself and all others similarly situated.

#### A. Violation of New Jersey Consumer Fraud Act (Count One)

To state a claim under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, 8-2, a plaintiff must allege three elements: (1) defendant's unlawful practice, (2) plaintiff's

4

ascertainable loss, and (3) a causal relationship between the two. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (internal quotation marks omitted). The CFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .[3]

N.J.S.A. 56:8-2.

When alleging fraud, Federal Rule of Civil Procedure 9(b) applies. Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Furthermore, a breach of warranty is not considered an unlawful practice per se under the CFA. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Rather, to state a valid CFA claim, a plaintiff must allege "substantial aggravating circumstances," *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997), and demonstrate that the defendant's conduct "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer," *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995). Whether a business practice is unfair is a question for the jury, but if the claim is founded on written statements, then the court must make a legal decision whether the practice is unlawful in light of the writings. *Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010) (citing *Rosenburg v. Wash. Mut. Bank, FA*, 369 N.J. Super. 456, 457 (App. Div. 2004)). Thus, if the parties' relationship is governed by a valid contract, a court will dismiss

---

[3] Merchandise is a broad term that includes "goods," "commodities," and "services of anything offered." N.J.S.A. 56:8-2(c).

5

a CFA claim if the defendant's allegedly unlawful conduct is expressly authorized by the terms of the parties' agreement. *See Hassler*, 374 F. App'x at 344 (dismissing a CFA claim because "[t]he Terms of the Account Agreement . . . explained the actions that [the defendant] eventually undertook); *Faistl v. Energy Plus Holdings LLC*, No. 12-2879, 2012 WL 3835815, at *6 (D.N.J. Sept. 4, 2012); *Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 3810870, at *1 (D.N.J. Sept. 21, 2010) (dismissing a CFA claim because "[t]he terms of the Customer Service Agreements between Plaintiffs and Defendants . . . clearly provided for and explained the actions that Defendants ultimately took . . . ."); *Rosenburg*, 369 N.J. Super. at 457 (affirming dismissal of a CFA claim because bank's actions were clearly outlined in disclosure documents).

To establish the first element of his CFA claim, Urbino alleges that Ambit engaged in two kinds of unlawful practices: misrepresentations and knowing omissions. (Compl. ¶¶ 72-73.) The Complaint states that "Defendants violated the CFA by engaging in fraudulent and deceptive sales practices of inducing customers to switch from their energy suppliers to Ambit Energy with the promise of energy cost savings and consistent market rates." (*Id.* ¶ 72.) The Complaint also alleges that "Defendants violated the CFA by failing to disclose to consumers that they would shift the risk of its volatile commodity prices onto consumers causing significant spikes in energy rates resulting in exorbitant energy costs to consumers." (*Id.* ¶ 73.)

Here, since the parties are governed by a written contract that explicitly allows Ambit to change the price of energy, Urbino's allegations of misrepresentation and omission are undermined, and Urbino fails to properly plead a CFA claim. "Where a CFA claim is based upon an allegedly incomplete or misleading disclosure, and where the parties' agreement 'contain[s] the very information that Plaintiffs allege was misrepresented, suppressed, or concealed,' dismissal for failure to state a claim is appropriate." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 515

(D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (quoting *Delaney v. Am. Express Co.*, No. 06-5134, 2007 WL 1420766, at *7 (D.N.J. May 11, 2007)). Ambit's Terms of Service Agreement absolves Ambit from Urbino's affirmative misrepresentation-based CFA claim because it explicitly grants Ambit the right to change the cost of energy, and it also absolves Ambit from Urbino's omission-based CFA claim because it discloses Ambit's business practice of being a third-party supplier.

The Terms of Service Agreement clearly conveys that "[i]f you selected a variable rate plan, your initial rate will be shown on your [Energy Facts Label] and thereafter rates are subject to change at the discretion of Ambit Energy." (Decl. of Michael W. Stockham ("Stockham Decl."), Ex. A ("TOSA") 2, ECF No. 37-5.)[4] The variable rate plan is described as "month-to-month," and the contract explains that the alternative "fixed-rate" plan has "a fixed rate for the entire term." (*Id.*) The contrast between the two options is clear: the variable rate plan can fluctuate in price, and the fixed-rate plan remains constant. The contract does not mention savings or make guarantees of any kind.[5] (*Id.*) In addition, the Agreement contains an integration clause, which is written in clear language: "This Agreement sets forth the entire agreement between the parties with

---

[4] The court can consider this document without converting the Rule 12(b)(6) motion into one for summary judgment because the Complaint relies upon the document, and its authenticity is uncontested. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that any "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment.") (citation omitted); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[5] On the contrary, the Terms of Service Agreement has a separate section entitled "Representations and Warranties" that states: "Ambit Energy makes no representations or warranties other than those expressly set forth in this agreement, and Ambit Energy expressly disclaims all other warranties, express or implied, including warranties of merchantability and fitness for a particular purpose." (TOSA 3.)

7

respect to the terms and conditions of this transaction; any and all other agreements, understandings and representations by and between the parties with respect to the matters addressed herein are superseded by this Agreement." (TOSA 3.) Thus, Urbino's claim that he was induced to switch energy providers because of Ambit's alleged misrepresentations concerning consistent rates and savings is undercut by the explicit language of the parties' agreement. *See Hassler*, 374 F. App'x at 344; *see also Alvarez v. Ins. Co. of N. Am.*, 313 F. App'x 465, 468 (3d Cir. 2008) ("Even if [defendant] knew the premiums would increase, the policy explicitly authorized such an increase and [plaintiff] cannot seriously claim to have been misled into believing that that would never happen."); *Faistl*, 2012 WL 3835815, at *6.

In *Faistl v. Energy Plus Holdings LLC*, the court dismissed a CFA claim against a third-party utility service provider on similar facts. 2012 WL 3835815, at *1. In that case, plaintiffs alleged that a third-party utility service provider lured customers away from their previous providers with misleading marketing materials. *Id.* The alleged misrepresentations included: "[s]ave on your bill—Energy Plus customers are currently saving with a competitive rate that is approximately 10% below your local utility provider." *Id.* The plaintiff alleged that the third-party provider actually charged customers far more than the previous provider. The court dismissed plaintiff's CFA claim on a Rule 12(b)(6) motion, stating:

> The [parties'] Agreement contained no guarantee that the monthly rate would, in fact, result in any percentage of savings over the local utility provider. Thus, Plaintiff's claim that Defendants . . . lured potential customers in by making exaggerated claims of energy savings which ultimately proved 'illusory,' is undercut by the explicit language contained in the parties' Agreement that monthly rates would be "variable," based on a variety of external factors.

*Id* at *6. The Court finds no reason to distinguish this case from *Faistl* with regard to the misrepresentation-based CFA claim.[6] Since Ambit was entitled by contract to change its rates, Ambit's representations do not constitute "substantial aggravating circumstances" such that they are considered an unlawful practice under the CFA. *See Rosenburg*, 369 N.J. Super. at 457.[7]

Likewise, Urbino's allegation that Ambit violated the CFA by omission is without merit because the Terms of Service Agreement sufficiently disclosed the relevant information concerning Ambit's business practices. Ambit's Terms of Agreement makes it clear exactly how Ambit's business operates. Fundamentally, the "capacity to mislead . . . is the prime ingredient of all types of consumer fraud [under the CFA]." *Turf*, 139 N.J. at 416. Here, Urbino alleges that Ambit failed to inform potential customers that Ambit bought energy at wholesale rates, and Ambit therefore "shift[ed] the risk of wholesale energy volatile rate spikes onto customers." (Compl. ¶ 75.) Yet the Terms of Service Agreement governing the parties' relationship defines Ambit as a "Third-Party Supplier" on multiple occasions. (TOSA 1.) It also informs the customer that Ambit's services "are provided on an arm's-length basis and market-based compensation is included in the price noted in your [Energy Facts Label]." (*Id.* at 2.) In addition, the payment

---

[6] Ambit's Terms of Service Agreement does not contain any language regarding "external factors" for why its rates are "variable." The Agreement, however, explicitly grants Ambit the right to change energy rates and uses the same term, "variable," to describe the rates for the service plan. (TOSA 2.)

[7] In addition, Ambit's statements, as alleged, constitute puffery since they "are vague, highly subjective claims, as opposed to specific, detailed factual assertions." *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 WL 6887721, at *6 (D.N.J. Dec. 29, 2011). Indeed, claims of "substantial savings," "low, competitive rates," "exceptional value," and "great savings" are not factual assertions. As such, they are not actionable under the CFA. *See Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 3810870, at *1 (D.N.J. Sept. 21, 2010) (holding defendants' advertisement that "[w]hen you shop at Suburban propane, you get . . . the best value!" and defendants' claim that their prices were "competitive" constituted non-actionable puffery, and therefore defendants did not affirmatively misrepresent the cost of propane despite charging customers prices higher than the industry average).

section of the agreement provides that "[e]ach billing period, you will receive a single invoice from your [Local Distribution Company] that includes Ambit Energy supply charges, as well as applicable [Local Distribution Company] charges, surcharges, state and local taxes." (*Id.*) Finally, under the "Representations and Warranties" section, Ambit states that "electricity and/or gas sold under this agreement may be supplied from a variety of sources." (*Id.* at 3.) If read in its entirety, the Terms of Service Agreement clearly indicates that, because Ambit is a third party supplier, Ambit does not create the energy but must buy the energy elsewhere and then supply it to the customer. As a result, there is no concealment, and therefore no omission, so Urbino has failed to allege an unlawful practice under the prevailing law. *See Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 425 (App. Div. 2003). Accordingly, Urbino has failed to plead an element required by the CFA and therefore fails to state a claim under the CFA. Thus, Count One is dismissed with prejudice.

### B.   Breach of Covenant of Good Faith and Fair Dealing (Count Six)

New Jersey law dictates that all contracts include an implied covenant that parties will act in good faith. *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). If a contract's term is vague, the implied covenant of good faith and fair dealing can be used as a gap filler, but the covenant cannot override the contract's express language. *See Fields v. Thompson Printing Co.*, 363 F.3d 259, 271-72 (3d Cir. 2004). Thus, a party's voluntary assumption of risk within the four corners of a contract becomes critical:

> A good faith performance doctrine may be said to permit the exercise of discretion for any purpose—including ordinary business purposes—reasonably within the contemplation of the parties. It follows, then, that a contract thus would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range—a reason beyond the risks assumed by the party claiming the breach.

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 246 (2001) (citation omitted).

This claim must be dismissed because the Complaint fails to allege facts that support the theory that Defendants have exercised their contractual rights in bad faith. Urbino alleges that "Defendants acted recklessly, maliciously, in bad faith, and without good cause" by "engaging in deceptive and misleading representations of energy costs savings, and shifting undisclosed risks of price spikes to consumers, resulting in customers being charged excessive energy rates," and therefore "prevent[ed] Urbino and the members of the Multistate Class from receiving their reasonably expected benefits under the services agreements." (Compl. ¶¶ 116-17.) Thus, Urbino's good faith and fair dealing claim is supported by the same facts that underlie his CFA claim. Yet if Ambit did increase its electric rates for a given month as alleged, then Ambit was exercising its explicit contractual right to change the rates at its own discretion. (TOSA 2.) In addition, the variable-rate plan outlined in the Terms of Service Agreement, in contrast to the fixed-rate plan, clearly places the risk of rate fluctuation on the consumer. Particularly within the context of a fixed-rate option, it is clear Urbino assumed the risk associated with Ambit's price-setting discretion. (*Id.*)

Further, the Complaint does not provide any facts that support Ambit's bad faith in exercising its discretionary price-setting authority. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Here, the Court is not provided with any facts that support the inference that Ambit acted in bad faith when it exercised its contractual rights. *See Hassler*, 644 F. Supp. 2d at 518 ("[A] plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff."). The Complaint alleges that Ambit's

omissions violated the covenant of good faith and fair dealing, but the covenant only applies to performance under the contract, and is not meant to cover pre-contractual settings. *See Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). By itself, the fact that Ambit exercised its contractual right to alter its rates does not amount to a breach of the covenant of good faith and fair dealing. *See Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."); *Hassler*, 374 F. App'x at 345 (affirming dismissal of a good faith and fair dealing claim because "[t]he Complaint repeatedly asserts the unlawful nature of [defendant's] acts, but is silent on its intention in doing so-other than simply seeking profit."). For the above reasons, Count Six is dismissed without prejudice.

### C. Unjust Enrichment (Count Seven)

To properly state an unjust enrichment claim under New Jersey law, Plaintiff must allege that "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Faistl*, 2012 WL 3835815, at *8 (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). Further, an unjust enrichment claim cannot be sustained under New Jersey law if there is a valid and unrescinded contract governing the parties' rights. *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).[8]

---

[8] Courts may refuse to dismiss an unjust enrichment claim and allow the claim to proceed as an alternative theory despite defendants' argument that an express contract governed the parties' relationship. *Network Commodities, LLC v. Golondrinas Trading Co.*, No. 11-3119, 2013 WL 1352234, at *11 (D.N.J. Apr. 1, 2013). In *Network Commodities*, the court reasoned that, because the plaintiff also alleged breach of contract, the unjust enrichment claim must survive as an alternative theory of recovery. (*Id.*) Here, however, Urbino does not allege breach of contract. Even if he had, his unjust enrichment claim would still fail. Urbino does not allege that he expected

12

Here, Urbino's unjust enrichment claim must be dismissed because a valid and unrescinded contract governed the parties' relationship. Count Seven of the Complaint states that Urbino "and the members of the Multistate Class would not have contracted with Defendants for energy had they known that Defendants had engaged in a misleading marketing scheme," and that "Defendants' retention of the benefit conferred upon them by Plaintiff Urbino . . . would be unjust and inequitable." (Compl. ¶¶ 122, 124.) In setting forth his claim for unjust enrichment, Urbino states that he "conferred a tangible economic benefit upon Defendants by contracting with Defendants for energy." (*Id.* ¶ 122.) Thus, Urbino admits that he entered into a valid contract with Ambit and that Ambit did supply him with energy. Indeed, Urbino never contests the validity of the contract governing the parties' relationship. In regards to Ambit's breach of the implied covenant of good faith and fair dealing, Urbino admits that the Terms of Service Agreement is valid when he tries to leverage it against Ambit: "Defendants acted recklessly, maliciously, in bad faith, and without good cause, thereby preventing Plaintiff Urbino and the members of the Multistate Class from receiving their reasonably expected benefits under the services agreements." (*Id.* ¶ 117.) As such, no grounds exist for an unjust enrichment claim under New Jersey law. Accordingly, Count Seven is dismissed with prejudice.

---

any additional remuneration from Ambit or that Ambit was enriched beyond its contractual rights. *See VRG Corp.*, 135 N.J. 539 at 552 (explaining that the "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant."). Thus, because Urbino received the energy he contracted for, he has not stated an adequate claim for unjust enrichment. *See Faistl*, 2012 WL 3835815, at *8 ("Because Plaintiff received the gas and electric services he paid for, Plaintiff has failed to state a claim for unjust enrichment that is plausible on its face."); *In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *14 (D.N.J. Sept. 11, 2009) (dismissing an unjust enrichment claim where "Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received.").

## IV. Conclusion

For the above reasons, the Court grants the Defendants' motion to dismiss.[9]  An order reflecting this decision accompanies this Memorandum Opinion.

Date: July 23rd, 2015

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[9] Defendants move, in the alternative, to transfer venue. This motion is moot in light of the Court's decision to grant Defendants' Rule 12(b)(6) motion. (Defs.' Mot. to Transfer 3, ECF No. 40.)